

**FILED**

Sep 05 2017, 5:40 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jessie Grimes, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | September 5, 2017 <br><br> Court of Appeals Case No. <br> 31A01-1609-CR-2190 <br><br> Appeal from the Harrison Superior Court <br><br> The Honorable Joseph L. Claypool, Judge <br><br> Trial Court Cause No. <br> 31D01-1602-F4-82 |

**Mathias, Judge.**

[1]     Jessie Grimes ("Grimes") was convicted in Harrison Superior Court of eighteen counts of Level 4 felony incest, two counts of Level 6 felony dissemination of matter harmful to minors, and one count of Level 6 felony obstruction of justice. He was ordered to serve an aggregate sentence of 111 years in the

Department of Correction. Grimes appeals his convictions and sentence and argues:

I. Whether the trial court committed fundamental error when it denied Grimes's motion to dismiss the charging information because it failed to notify him of the specific allegations against him;

II. Whether the trial court erred when it denied Grimes's motion to sever the obstruction of justice charge;

III. Whether the trial court abused its discretion by ordering the sentences for each count to be served consecutively and by finding certain aggravating circumstances; and,

IV. Whether Grimes's 111-year aggregate sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

Grimes is the father of A.G., D.G., and J.G., and in 2015, the children lived with Grimes and his girlfriend, Ashleigh Keck ("Keck"). In August 2015, S.G. was fourteen and started the seventh grade, and her sister D.G. turned ten in October 2015.

In the summer or fall of 2015, Grimes showed a pornographic movie to S.G. He asked S.G. questions about the sexual acts depicted in the movie and whether she knew how to perform them.

Keck moved out of Grimes's home in November 2015. Shortly thereafter, Grimes showed a video to ten-year-old D.G. showing a male and female

touching each other under their clothes. D.G. knew the video was inappropriate and tried not to watch it. Grimes instructed D.G. not to tell anyone about the video.

[5] Also, in November 2015, Grimes punished S.G. by making her touch his penis. Grimes established a Facebook account under a fake name and sent S.G. pictures of his penis. S.G. also met a girl on Facebook who refused to video chat with her, but told S.G. that she was having sex with her father. The girl encouraged S.G. to have sex with Grimes and sent S.G. bible verses that the girl claimed gave daughters permission to have sexual intercourse with their fathers. In this same month, Grimes also took S.G. to purchase birth control.

[6] At the end of November 2015, Grimes began to have sexual intercourse with S.G. S.G. was later able to describe more than eighteen separate incidents of sexual intercourse between herself and Grimes. They also performed oral sex on each other. In addition, Grimes had unprotected sex with S.G. when she remembered to take her birth control. Grimes told S.G. that he could go to jail if anyone knew that they had sexual intercourse and to keep it a secret between them. On one occasion, Grimes also recorded himself having sex with S.G. because Grimes wanted S.G. to "see how [she] was like porn." Tr. Vol. I, p. 212. During this time, Grimes also purchased a vibrator for S.G.

[7] On February 5, 2016, S.G. told a school official that she was having sexual intercourse with Grimes. S.G. and her siblings were removed from Grimes's home and placed with their paternal grandmother. Grimes was arrested a few

days later and charged with twenty counts of Level 4 felony incest, twenty counts of Level 6 felony sexual misconduct with a minor, and two counts of Level 6 felony dissemination of matter harmful to minors.

[8] While he was in jail awaiting trial, Grimes asked his former girlfriend Keck to access S.G.'s Facebook account and send a group message to S.G.'s friends. Keck did not know how to send a group message, and Grimes instructed her to ask her thirteen-year-old son. When Keck finally agreed to send the message, Grimes gave Keck S.G.'s username, password, dictated the message and told Keck what time to send it. Keck sent the following message from S.G.'s Facebook account to S.G.'s friend from church, Grimes's stepsister, and S.G.'s former boyfriend:

> Everything is working. They are believing it all. I will be out of here and we will be together. This new school sucks. My grandma is still not [believing] me but when they find the stuff I planted. My dad is [staying] in jail for a long time. Love you. I told you everything what Lisa said to.

Ex. Vol., State's Ex. 6. Grimes's stepsister, a recipient of the message, disclosed it to an attorney involved in the criminal proceeding.

[9] Thereafter, on April 11, 2016, the State charged Grimes with Level 6 felony obstruction of justice. Grimes filed a motion to sever the charge from the remaining charges, arguing that the offense was not of the same or similar character of the other charged acts. The trial court denied the motion. The trial

court also denied Grimes's separately filed motion to dismiss the incest and sexual misconduct with a minor charges for lack of specificity.

[10] Grimes's four-day jury trial commenced on June 14, 2016. During trial, the trial court granted the State's motion to dismiss two counts of incest and two counts of sexual misconduct with a minor. The jury found Grimes guilty of the remaining charges.

[11] The sentencing hearing was held on August 29, 2016. The trial court vacated the eighteen sexual misconduct with a minor counts for double jeopardy reasons. Grimes was then ordered to serve consecutive six-year sentences for each of the eighteen Level 4 felony incest convictions, a total of 108 years. He was also ordered to serve consecutive one-year terms for each of the two Level 6 felony convictions for dissemination of matter harmful to minors and the single Level 6 felony obstruction of justice conviction. In the aggregate, Grimes was ordered to serve a 111-year sentence in the Department of Correction. Grimes now appeals his convictions and sentence.

## Specificity in the Charging Information

[12] Grimes argues that the twenty counts of incest in the charging information lack specific facts to distinguish each charged count from the others, and therefore, he was not given sufficient notice of the charges against him. Indiana Code section 35-34-1-2 provides that the charging information shall state "the nature and elements of the offense charged in plain and concise language without unnecessary repetition" and contain "a plain, concise, and definite written

statement of the essential facts constituting the offense charged." I.C. § 35-34-1-2(a)(4), (d). The purpose of a charging information is to advise the defendant of the particular offense charged so that he can prepare a defense and be protected from being twice placed in jeopardy for the same offense. *Leggs v. State*, 966 N.E.2d 204, 207 (Ind. Ct. App. 2012).

[13] "The State is not required to include detailed factual allegations in a charging information." *Laney v. State*, 868 N.E.2d 561, 567 (Ind. Ct. App. 2007), *trans. denied*. "An information that enables an accused, the court, and the jury to determine the crime for which conviction is sought satisfies due process. Errors in the information are fatal only if they mislead the defendant or fail to give him notice of the charge filed against him." *Dickenson v. State*, 835 N.E.2d 542, 550 (Ind. Ct. App. 2005) (citations omitted), *trans. denied*. "[W]here a charging instrument may lack appropriate factual detail, additional materials such as the probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges against him." *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010), *trans. denied*.

[14] The trial court may dismiss a charging information if it "does not state the offense with sufficient certainty" or if the "facts stated do not constitute an offense." Ind. Code § 35-34-1-4. But a defendant charged with a felony must file such motion no later than twenty days before the omnibus date. *Id*. Grimes concedes that he failed to timely challenge the allegedly defective charging information.

[15] Failure to timely challenge an allegedly defective charging information results in waiver unless fundamental error has occurred. *See Hayden v. State*, 19 N.E.3d 831, 840 (Ind. Ct. App. 2014), *trans. denied*; *Leggs*, 966 N.E.2d at 207–08. Fundamental error is an extremely narrow exception to the waiver rule, and the defendant faces the heavy burden of showing that the alleged error is so prejudicial to the defendant's rights as to make a fair trial impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied*. An error in a charging information is fundamental if it "mislead[s] the defendant or fail[s] to give him notice of the charges against him so that he is unable to prepare a defense to the accusation." *Leggs*, 966 N.E.2d at 208 (quotation omitted).

[16] In this case, Grimes was charged with twenty counts of Level 4 felony incest. In each of the twenty counts, the State alleged that

> In Harrison County, State of Indiana, on or about the time between August 1st, 2015 and February 1st, 2016, and at a different time than alleged in any other Count, JESSIE GRIMES, a person eighteen (18) years of age or older, did engage in sexual intercourse or other sexual conduct, with another person, when the person knows that the other person is related to the person biologically as a parent, child, grandparent, grandchild, sibling, aunt, uncle, niece, or nephew and the other person is less than sixteen (16) years of age;
> To-Wit: JESSIE GRIMES, a person over eighteen (18) years of age did engage in sexual intercourse with S.G., his biological daughter who is less than sixteen (16) years of age, in Harrison County, Indiana, which is contrary to the form of the statute in such cases made and provided and against the peace of the State of Indiana.

Appellant's App. Vol. II, pp. 26–45. Grimes contends that the charging information for each count of incest lacked "specific facts that would distinguish one count from the other" and "without such details, Grimes was deprived of his due process right to know the specific offense with which he is charged." Appellant's Br. at 28.

[17] However, Grimes does not argue that the State's failure to include specific facts to differentiate each of the twenty counts of incest left him unable to prepare his defense. At trial, Grimes claimed that he did not engage in sexual intercourse or other sexual conduct with S.G. and she had fabricated the allegations. And Grimes does not claim that he was misled because the State did not allege specific facts for each incest count. The charging information sufficiently informed Grimes that he was charged with committing twenty separate acts of incest by engaging in sexual intercourse or other sexual conduct with his daughter, S.G., between the dates of August 1, 2015 and February 1, 2016. For all of these reasons, Grimes has not established that the trial court committed fundamental error when it denied his motion to dismiss the charging information.

## Motion to Sever

[18] Grimes argues that the trial court erred when it denied his motion to sever the obstruction of justice charge from the remaining charges. Indiana Code section 35-34-1-9(a) provides that

[t]wo (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

[19] Subsection 9(a)(1) refers to the nature of the charged offenses, whereas subsection 9(a)(2) refers to the operative facts underlying those charges. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015).

[20] The defendant shall have the right to severance of the offenses "[w]henever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character[.]" Ind. Code § 35-34-1-11.

In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

*Id.*

The trial court denied the pre-trial motion to sever after concluding that the obstruction of justice charge was "so closely related" to the other charges that they could not be "separated fairly." Tr. Vol. I, p. 34. Grimes failed to renew his motion at trial, and therefore, he waived the right to severance. *See* Ind. Code § 35-34-1-12(b) (establishing that where a pretrial motion for severance is denied, the motion may be renewed on the same grounds at or before the close of all evidence at trial, and failure to renew the motion waives the right to severance).

Waiver notwithstanding, the trial court acted within its discretion when it denied Grimes's motion to sever.[1] *See Pierce*, 29 N.E.3d at 1264 (stating that "[w]here offenses have been joined because the defendant's underlying acts are connected together, we review the trial court's decision for an abuse of discretion"). Grimes's motive for committing the obstruction of justice charge was to cast doubt on S.G.'s credibility. Grimes instructed his former girlfriend to log onto S.G.'s Facebook account and send a message to S.G.'s friends, which implied that S.G. fabricated her allegations against Grimes. And Grimes's defense at trial was to claim that S.G. and D.G. fabricated the allegations against him.

Moreover, although over forty charges were filed against Grimes, the nature of those charges and the evidence presented were not overly complex. Much of the

---

[1] In this case, Grimes concedes that the obstruction of justice charge was not joined for trial in the same information solely on the ground that the charge is of the same or similar character of the other charges. Appellant's Br. at 32–33.

evidence consisted of S.G.'s and D.G.'s testimony and exhibits containing photographs and copies of Facebook messages. Finally, Grimes does not claim that the jury was unable to distinguish the evidence that applied to the obstruction of justice charge from the evidence of the remaining charges.

[24] For all of these reasons, we conclude Grimes waived the issue for appeal, but waiver notwithstanding, the trial court acted within its discretion when it denied Grimes's pre-trial motion to sever.

# Sentencing

[25] Grimes raises three challenges to his 111-year aggregate sentence. First, he argues that the trial court erred when it imposed consecutive sentences because his offenses constitute a single episode of criminal conduct. Next, Grimes contends that the trial court abused its discretion in its consideration of the aggravating circumstances. Finally, Grimes argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

### A. Grimes's Conduct was not a Single Episode of Criminal Conduct

[26] A trial court cannot order consecutive sentences in the absence of express statutory authority. *Reed v. State*, 856 N.E.2d 1189, 1199 (Ind. 2006). "'A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization.'" *Id.* (quoting *Rhodes v. State*, 698 N.E.2d 304, 307 (Ind. 1998)).

Grimes argues that his offenses constitute a single episode of criminal conduct, and therefore, the trial court's authority to impose consecutive sentences in this case was limited by Indiana Code sections 35-50-1-2(c) and (d), which provides in pertinent part:

> Except as provided in subsection (e) or (f) the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the:
>
> > (1) aggravating circumstances in IC 35-38-1-7.1(a); and
> >
> > (2) mitigating circumstances in IC 35-38-1-7.1(b);
>
> in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. *However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10 (before its repeal) to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the period described in subsection (d).*
>
> (d) Except as provided in subsection (c), the total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed the following: . . .
>
> > 3) If the most serious crime for which the defendant is sentenced is a Level 4 felony, the total of the consecutive terms of imprisonment may not exceed fifteen (15) years.

(emphasis added).

"Whether certain offenses constitute a 'single episode of criminal conduct' is a fact-intensive inquiry" to be determined by the trial court. *Slone v. State*, 11

N.E.3d 969, 972 (Ind. Ct. App. 2014) (quoting *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002)). An episode of criminal conduct "means offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b).

> In determining whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes. [A]dditional guidance on the question can be obtained by considering whether the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to the details of the other charge.

*Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008) (internal citations and quotations omitted).

[29] Grimes argues that his offenses constitute a single episode of criminal conduct because he committed incest solely against S.G. and his offenses took place only in his home over a period of approximately nine weeks.

[30] S.G. gave a detailed description of each separate act of sexual intercourse and the room or location in the room in Grimes's home where the offense took place. The offenses for which Grimes was convicted did not take place on the same day, but on many days over approximately nine weeks. Although it is not critical to our inquiry,[2] we observe that each incest conviction is supported by

---

[2] Our supreme court has clarified that "although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an

evidence that is separate and distinct from the evidence supporting the other convictions. In addition, the two dissemination of matter harmful to minors convictions are importantly supported by evidence that Grimes showed pornography to S.G. and D.G. on separate dates. Those two offenses were also committed separate and apart from the eighteen offenses which led to Grimes's incest convictions.

[31] Because Grimes's offenses were not simultaneous or contemporaneous, his offenses do not constitute a single episode of criminal conduct. *Cf. Harris v. State*, 861 N.E.2d 1182 (Ind. 2007) (holding that convictions for sexual misconduct with a minor constituted one episode of criminal conduct because the acts, involving two victims, took place in the same bed, five minutes apart, and for the same reason—that the girls must have intercourse in order to stay the night with the defendant).

### B. Aggravating Circumstances

[32] Sentencing decisions are within the purview of the trial court's sound discretion and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs when the sentencing decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. There are several

---

episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms...." *Harris v. State*, 861 N.E.2d 1182, 1188 (Ind. 2007).

ways a trial court may abuse its discretion, including failing to enter a sentencing statement at all, articulating reasons in a sentencing statement that are not supported by the record, omitting reasons in a sentencing statement that are clearly supported by the record, or articulating reasons that are improper as a matter of law. *Id*. at 490–91.

[33] The trial court did not issue a written sentencing statement listing the aggravating circumstances. The trial court discussed the aggravating circumstances in its oral sentencing statement, but the statement is not entirely clear. After reviewing the oral sentencing statement, we conclude that the trial court considered the following aggravating circumstances: that Grimes victimized his young children, fourteen-year-old S.G. and ten-year-old D.G., that the offenses occurred over a long period of time, that Grimes was in a position of having care, custody, and control over the victims, and that the State proved eighteen different "times that this occurred by the different sexual acts, the different positions[.]" Tr. Vol. III, p. 231.

[34] To the extent that the trial court considered S.G.'s age as an aggravating circumstance, the court abused its discretion because age is a material element of incest. *See Edrington v. State*, 909 N.E.2d 1093, 1097 (Ind. Ct. App. 2009), *trans. denied* (stating that when a victim's age is a material element of the crime, it may not also support an enhanced sentence). However, a trial court may consider particularized circumstances of a criminal act to constitute separate aggravating circumstances. *See Vasquez v. State*, 762 N.E.2d 92, 98 (Ind. 2001). Under the circumstances of this case, we conclude that the trial court acted

within its discretion when it considered D.G.'s young age as an aggravating circumstance with regard to the dissemination of matter harmful to minors conviction.

[35] The trial court also properly considered as aggravating that Grimes victimized S.G. for an extended period of time. A trial court may consider the particularized circumstances of a crime as an aggravating circumstance. *Gellenbeck v. State*, 918 N.E.2d 706, 712 (Ind. Ct. App. 2009). And the trial court properly considered Grimes's position of having care, custody, and control over S.G. and D.G. as an aggravating circumstance.

[36] However, the court improperly considered that the State proved eighteen different acts of sexual intercourse as an aggravating circumstance. If the trial court relies upon an aggravating factor that is also a material element of the offense, then the trial court abuses its discretion. *See Gomillia v. State*, 13 N.E.3d 846 (Ind. 2014). S.G.'s testimony concerning how those offenses occurred established the material elements of incest.

[37] Because we conclude that the trial court improperly considered D.G.'s age and the number of incest offenses committed as aggravating circumstances, we must determine whether the trial court would have imposed the same sentence absent this error. *See Edrington*, 909 N.E.2d at 1101 (observing that it is proper to affirm sentence where an improper aggravator is considered, if we have "confidence the trial court would have imposed the same sentence" regardless).

[38] Despite finding multiple aggravating circumstances, the court sentenced Grimes to the advisory sentence for each of his convictions. And the trial court found that the aggravating circumstances far outweighed the mitigating circumstance, i.e. Grimes's lack of a criminal history. It is also apparent from the sentencing statement that the trial court believed that the particular nature and circumstances of Grimes's offenses warranted consecutive terms, and we agree. We are therefore confident that the trial court would have imposed the same sentence even if it had not considered the improper aggravating circumstances.

### C. Inappropriate Sentence

[39] Finally, Grimes argues that his aggregate 111-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[40] In conducting our review, "[w]e do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as

substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Ultimately, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result. *Cardwell*, 895 N.E.2d at 1225. Grimes bears the burden to establish that his sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

[41] When considering the nature of the offense, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). The advisory sentence for a Level 4 felony is six years, *see* Ind. Code § 35-50-2-5.5, and Grimes was sentenced to consecutive six-year terms for each Level 4 felony incest conviction, for a total of 108 years. Grimes was also ordered to serve the advisory one-year sentence for each of his three Level 6 felony convictions, *see* Ind. Code § 35-50-2-7, to be served consecutive to each other and to the Level 4 felony sentences. In the aggregate, Grimes was ordered to serve 111 years.

[42] Thirty-five-year old Grimes showed pornography to his ten-year-old and fourteen-year-old daughters allegedly to teach them about sex. He sent fourteen-year-old S.G. pictures of his penis through her Facebook account. He also punished S.G. by having her touch his penis. After his girlfriend moved out of their home, he had sexual intercourse with S.G. at least eighteen times over the course of nine weeks. Grimes had sex with S.G. in different locations in the home and in different sexual positions, all of which S.G recounted in detail. Grimes and S.G. also performed oral sex on each other. He videotaped himself

having sex with S.G. on at least one occasion and showed her the video. He also bought her a vibrator and lingerie to wear.

[43] Grimes's offenses also reveal his deplorable character. Grimes was S.G.'s and D.G.'s sole parent present in their young lives. He repeatedly victimized his daughter over an extended period of time. In addition, while the criminal proceedings were pending, he convinced his girlfriend to log into S.G.'s Facebook account and send a message to S.G.'s friends purportedly from S.G. implying that S.G. had fabricated the allegations against Grimes. Finally, Grimes has not demonstrated any remorse whatsoever for what he did to his family.

[44] For all of these reasons, we conclude that Grimes's aggregate 111-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

[45] The trial court did not err when it denied Grimes's pre-trial motion to dismiss the charging information and motion to sever. We also reject Grimes's challenges to his 111-year aggregate sentence and conclude that the sentence is not inappropriate in light of the nature of the offense and the character of the offender.

[46] Affirmed.

Kirsch, J., and Altice, J., concur.